UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                                                              REPORT & RECOMMENDATION

                                    Plaintiff,

                                                              04-CR-6179T

               v.

JAMES McCLOUD,

                              Defendant.

## PRELIMINARY STATEMENT

By Order of Hon. Michael A. Telesca, United States District Judge, dated December 17, 2004, all pre-trial matters in the above-captioned case have been referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B).  (Docket # 2).

Defendant James McCloud (hereinafter "McCloud") is charged in a four-count indictment.  The first count charges McCloud with possessing a firearm in furtherance of drug trafficking crimes, namely, the crimes charged in the three subsequent counts of the indictment, in violation of 18 U.S.C. § 924(c)(1)(A)(i).  Count Two charges McCloud with possessing with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).  The third count charges McCloud with possessing with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D).  The final count charges McCloud with possessing a firearm after having been convicted of a crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  Each count alleges that the charged offense occurred on or about September 23, 2004.  (Docket # 1).

Currently pending before this Court for Report and Recommendation are McCloud's motions to suppress evidence seized from 56 Garfield Street pursuant to the execution of a search warrant signed by Monroe County Court Judge Richard A. Keenan.[1] McCloud challenges the lawfulness of the search warrant on three grounds. First, McCloud argues that the search warrant was unsupported by probable cause because it was based upon information provided by an informant of unknown veracity. Second, McCloud contends that the warrant unjustifiably permitted the searching officers to enter his residence without knocking and announcing their presence. Finally, McCloud asserts that the searching officers exceeded the scope of the search warrant. (Docket # 14). The government opposes McCloud's motion, arguing that he lacks standing to challenge the search warrant and that the evidence is properly admissible in any event. (Docket ## 15, 20).

## FACTUAL BACKGROUND

In support of his motion to suppress, McCloud has submitted for review a copy of the search warrant issued by Judge Keenan for 56 Garfield Street, as well as a copy of the affidavit offered in support of the warrant sworn to by Officer Aaron Springer of the Rochester Police Department ("Springer Aff."). (Docket # 14, Exs. 2 and 3). Springer's affidavit detailed two controlled purchases of narcotics by a confidential informant.

---

[1] McCloud's omnibus motions also sought, *inter alia*, disclosure of the identity of the government's confidential informants, discovery of controlled substance tests, *Jencks* material, rulings on evidentiary matters under Rule 404 of the Federal Rules of Evidence and the preservation of rough notes. (Docket # 14). Each of these requests was either resolved by the parties or decided in open court by the undersigned on November 3, 2005. (Docket ## 18, 19).

2

Specifically, Springer affirmed that on August 31, 2004, at approximately 7:14 p.m., he and Rochester Police Officer Padilla met with a confidential informant for the purpose of conducting a controlled purchase of cocaine.  The confidential informant was initially searched to ensure that he did not possess contraband.  Springer then provided the informant with $40 in cash and drove him to the area of 56 Garfield Street.[2]  (Springer Aff. at 3).[3]  At approximately 7:24 p.m., Springer observed the confidential informant exit the vehicle and walk directly to 56 Garfield Street.  The informant stepped onto a porch on the west side of the residence and entered the door.  Approximately five minutes later, the informant re-emerged from the residence, walked directly back to the car in which Springer was sitting and produced four clear plastic zip-lock bags containing white rock-like substances, later determined to be cocaine.  (Springer Aff. at 3).

The confidential informant reported to Springer that after he had entered the residence at 56 Garfield Street, he encountered a black woman wearing a brown shirt and brown pants.  After a brief conversation regarding cocaine, the woman sold the confidential informant four clear plastic zip-lock bags containing a white rock-like substance for $40.  The informant further stated that he returned directly to the police vehicle after receiving the narcotics.  (Springer Aff. at 4).

The second controlled purchase detailed in Springer's affidavit occurred on September 14, 2004.  According to Springer, on that date, at approximately 6:30 p.m., he and

---

[2]  For ease of reading, this Court will use the male pronoun to refer to the confidential informant, although the government has not identified the gender of the informant.

[3]  References to the Springer Affidavit are to the unnumbered pages of the affidavit.

Officer Padilla met with a confidential informant for the purpose of conducting another controlled purchase of narcotics from 56 Garfield Street.[4]  Springer searched the informant and determined that he did not possess contraband.  Springer then provided the informant with $40 in cash and drove him to the area of 56 Garfield Street.  (Springer Aff. at 4).

As with the first controlled purchase, Springer observed the informant leave his police vehicle at approximately 7:41 p.m., walk directly onto the porch on the west side of 56 Garfield Street and enter the residence.  After approximately six minutes, Springer observed the confidential informant re-emerge from the residence and return directly to his vehicle.  Upon his return, the informant produced four clear zip-lock bags containing cocaine.  (Springer Aff. at 4).

Once he returned to the police vehicle, the informant reported to Springer that upon entering the residence at 56 Garfield Street, he met a black man wearing only his underwear.  The informant had a conversation with the man regarding the purchase of cocaine, after which the man sold the informant four clear pink plastic bags containing a white rock-like substance for $40.  After he received the cocaine, the informant returned directly to Springer's vehicle.  (Springer Aff. at 5).

Although it is unclear from the affidavit whether a single informant made both controlled purchases or whether two different informants were utilized, Springer affirmed that the confidential informant(s) were personally known to him and other members of the Rochester Police Department narcotics unit.  Springer also stated that the informant(s) had provided reliable

---

[4] Springer did not indicate whether the confidential informant who purchased cocaine on September 14, 2004 was the same informant who made the controlled purchase on August 31, 2004.

information in the past concerning narcotics trafficking, which had led to numerous controlled

purchases of narcotics, as well as numerous arrests.  (Springer Aff. at 5 and 6).


## REPORT AND RECOMMENDATION

As noted above, McCloud moves to suppress evidence seized from 56 Garfield

Street on the grounds that the warrant was unsupported by probable cause because the affidavit

offered in support of the warrant failed to establish the veracity of the confidential informants.

McCloud further asserts that the warrant unlawfully permitted the searching officers to enter

without knocking and announcing their presence and that the searching officers exceeded the

scope of the warrant.  (Docket # 14).  The government contends that McCloud lacks standing to

challenge the warrant and that the evidence seized from 56 Garfield Street is properly admissible.

(Docket ## 15, 20).


## I.  Standing to Challenge the Search Warrant

A defendant seeking to suppress evidence must demonstrate by a preponderance

of the evidence that he had a reasonable expectation of privacy in the location or items searched.

*Rakas v. Illinois*, 439 U.S. 128, 143 (1978); *United States v. Perea*, 986 F.2d 633, 639 (2d Cir.

1993); *United States v. Osorio*, 949 F.2d 38, 40 (2d Cir. 1991).  This expectation of privacy must

be both subjectively and objectively reasonable – that is, the defendant must have a subjective

expectation of privacy and that expectation must be one that is deemed objectively reasonable by

society at large.  *United States v. Fields*, 113 F.3d 313, 320 (2d Cir.), *cert. denied*, 522 U.S. 976

(1997); *United States v. Osorio*, 949 F.2d at 40.  Courts generally evaluate standing by

5

considering "whether the defendant had any property or possessory interest in the place searched or the items seized." *United States v. Osorio*, 949 F.2d at 40 (citations omitted).

The burden of establishing standing falls squarely upon the defendant. *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980). This burden "is met only by sworn evidence, in the form of an affidavit or testimony, from the defendant or someone with personal knowledge. A defendant's unsworn assertion of the Government's representations does not meet this burden." *United States v. Montoya-Eschevarria*, 892 F. Supp. 104, 106 (S.D.N.Y. 1995) (citations omitted).

It is generally well-accepted that overnight guests, despite their lack of a property interest in the residence, enjoy an expectation of privacy in the residence in which they are staying. *See Minnesota v. Olson*, 495 U.S. 91, 98 (1990) (establishing that overnight guest has legitimate expectation of privacy in host's home); *United States v. Fields*, 113 F.3d at 320 ("society recognizes as legitimate the expectation of privacy possessed by an overnight guest – even though he has at best a fleeting connection to his host's home") (citing *Minnesota v. Olson*, 496 U.S. at 98). In *Fields*, the Second Circuit articulated several factors to consider in evaluating the reasonableness of an overnight guest's expectation of privacy, including whether he had a key, paid rent, could come and go as he pleased, used the residence without the owner present and regularly stayed at the residence. *United States v. Fields*, 113 F.3d at 320.

In support of his motion to suppress, McCloud has submitted an affidavit in which he affirms that he was an overnight guest at 56 Garfield Street. (McCloud Aff.). Specifically, he states that during the months of June, August, September and October 2004, he spent approximately twenty nights each month as an overnight guest of the tenant, his girlfriend,

6

Angelia Hawkerson.  (McCloud Aff. at ¶ 4).  McCloud affirms that on the day of the search, September 23, 2004, he had arrived at the residence in the evening after work and expected to stay overnight.  (McCloud Aff. at ¶ 4).  In addition to staying as an overnight guest, McCloud also shared a single key to the residence with Ms. Hawkerson and kept various personal items at 56 Garfield Street, including clothing, toiletry items and several musical instruments.  (McCloud Aff. at ¶ 5).  McCloud further asserts that he regularly ate meals with Ms. Hawkerson and her children and that he regularly cared for the children.  Finally, McCloud affirms that he had the authority to exclude others from the property and that the Rochester Gas and Electric utility bill for the residence was registered in his name.  (McCloud Aff. at ¶¶ 7-8).

On this record, I find that McCloud had a reasonable expectation of privacy in the residence at 56 Garfield Street.  Although he may not have held a legal interest, McCloud's affidavit adequately demonstrates that he enjoyed a "sufficient interest in [the residence] so that the Fourth Amendment protect[ed] him."  *United States v. Fields*, 113 F.3d at 320 (quoting *Rakas v. Illinois*, 439 U.S. at 142).  Accordingly, I find that McCloud has standing to challenge the search warrant for 56 Garfield Street.

## II.  <u>Veracity of the Confidential Informant</u>

McCloud maintains that suppression of evidence seized pursuant to the warrant is mandated because the warrant "was based entirely on the statements of unknown confidential informants, the veracity of which is speculative at best."  (Docket # 14 at 14).  In essence, McCloud argues that Officer Springer's affidavit in support of the warrant failed to establish

probable cause because it relied upon information provided by informants of undemonstrated reliability.  This Court disagrees.

The Fourth Amendment to the Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV; *see also* Fed. R. Crim. P. 41.

In *Illinois v. Gates*, 462 U.S. 213 (1983), the Supreme Court affirmed the "totality of the circumstances" test to determine whether a search warrant satisfies the Fourth Amendment's probable cause requirement.  The issuing judicial officer must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238.  This Court, as a reviewing court, must determine merely whether the issuing judge had a "'substantial basis for ... conclud[ing]' that probable cause existed." *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) (quoting *Gates*, 462 U.S. at 238-39) (internal quotation omitted).

In this matter, McCloud does not appear to challenge the factual assertions made in Springer's affidavit.  Rather, he argues that Officer Springer's affidavit was insufficient because it failed to demonstrate adequately the veracity of the confidential informant(s) who made the controlled purchases of cocaine from 56 Garfield Street.  (Docket # 14).  Contrary to McCloud's assertions, however, Springer specifically affirmed that he and other members of the Rochester Police Department narcotics unit knew the confidential informant(s).  According to the

affidavit, the informant(s) had provided reliable information in the past concerning narcotics trafficking, which had led to numerous controlled purchases and arrests.  (Springer Aff.  at 4 and 5).  "This information alone goes a long way to satisfying the totality of the circumstances test outlined in *Gates*."  *United States v. Brown*, 744 F. Supp. 558, 567 (S.D.N.Y. 1990); *see United States v. Cooper*, 1991 WL 60371, *3 (S.D.N.Y. 1991) (in determining probable cause, court may rely upon assertions regarding the confidential informant's past reliability) (citing *United States v. Bourbon*, 819 F.2d 856, 859 (2d Cir. 1987) (statement in affidavit regarding past reliability of confidential informant supported finding of probable cause)).

        Springer's affidavit also detailed two controlled purchases of cocaine made by the confidential informant(s) from 56 Garfield Street.  That the informants' information was based upon first-hand observation weighs in favor of its credibility.  *United States v. Wagner*, 989 F.2d 69, 73 (2d Cir. 1993) ("[a]n informant's participation in supervised drug purchases is powerful corroborative evidence for purposes of determining probable cause"); *see Smith*, 9 F.3d at 1013 (confidential informant who personally performed controlled buys deemed reliable) (citing *United States v. Elliott*, 893 F.2d 220, 223 (9th Cir.) ("[a] detailed eye-witness report of a crime is self-corroborating; it supplies its own indicia of reliability") (citations omitted), *modified*, 904 F.2d 25 (9th Cir.), *cert. denied*, 498 U.S. 904 (1990)).

        Moreover, the confidential informant(s) provided Springer with a detailed account of the controlled purchases.  Immediately following the first purchase, the informant reported to Springer that he had entered the residence at 56 Garfield Street and had encountered a woman wearing a brown shirt and brown pants.  The informant had a brief conversation with the woman and thereafter purchased from her four dime bags of cocaine.  (Springer Aff. at 3).  The

9

informant who conducted the second controlled purchase reported that upon entering 56 Garfield

Street, he immediately encountered a man wearing only his underwear.  The informant spoke

with the man regarding the purchase of cocaine and thereafter purchased four dime bags of

cocaine.  (Springer Aff. at 4).  In addition, the reports provided by the informant(s) were

consistent with Springer's own observations.  This level of detail and corroboration further

establishes the reliability of the confidential informant(s).  *See Gates*, 462 U.S. at 245

(informant's "range of details" regarding the alleged crime supports informant's reliability);

*United States v. Walker*, 922 F. Supp. 732, 752 (N.D.N.Y. 1996) (range of details is strong

evidence of confidential informant's reliability) (citing *Illinois v. Gates*, 462 U.S. at 230)).

Reviewing Springer's affidavit in light of this authority, this Court finds that Judge Keenan was

not unreasonable in his determination that the warrant was supported by probable cause.  It is

therefore my recommendation that the district court deny McCloud's motion to suppress based

upon the affidavit's alleged failure to demonstrate the veracity of the confidential informants.


**III.   <u>No-Knock Entry</u>**

              The search warrant issued by Judge Keenan for 56 Garfield Street authorized the

searching officers to enter the residence without knocking and announcing their presence.

(Docket # 14, Ex. A).  According to McCloud, Springer's affidavit offered in support of the

warrant application failed to demonstrate a particularized need for the no-knock authorization

and relied only on boilerplate language.  Thus, McCloud contends, the no-knock authorization

was improper, and the evidence seized should thus be suppressed.  (Docket # 14).

Under New York Criminal Procedure Law § 690.35(4)(b), an officer may request authorization to enter a premises without first knocking or announcing his or her presence upon a showing of reasonable cause to believe that the property sought in the warrant may be easily and quickly destroyed or disposed of, or that the safety of the officer or another would be endangered by the giving of such notice.  *See United States v. Ramirez*, 523 U.S. 65, 71 (1998) ("a no-knock entry is justified if police have a 'reasonable suspicion' that knocking and announcing would be dangerous, futile, or destructive to the purposes of the investigation") (citing *Richards v. Wisconsin*, 520 U.S. 385, 394-95 (1997)); *Wilson v. Arkansas*, 514 U.S. 927, 936 (1995) ("although a search and seizure of a dwelling might be constitutionally defective if police officers enter without prior announcement, law enforcement interests may also establish the reasonableness of an unannounced entry").  While the Fourth Amendment does not permit a blanket exception to the knock and announce requirement for felony drug investigations, *Richards*, 520 U.S. at 394, the requirement may be excused where there exists "a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence."  *Id.*

In his affidavit offered in support of the warrant, Springer described two controlled purchases of narcotics that had been made from 56 Garfield Street.  Based upon those purchases, Springer opined that probable cause existed to believe that evidence relating to narcotics trafficking would be discovered at the residence.  (Docket # 14, Ex. B).  The affidavit also requested the issuance of a no-knock warrant because:

11

a) The property sought to be seized may be easily and quickly
disposed of or destroyed.  Based on your deponent's experience,
dealers of controlled substances and/or marijuana often flush said
substances down the toilet or have predetermined hiding places in
order to keep said substances from being seized by executing
Police Officers.

b) The giving of such notice may endanger the life or safety of the
executing Police Officer or that of a third person because of the
fact that the person(s) involved in the sales of cocaine normally are
in possession of weapons to guard the substance possessed.
Therefore, I request a no-knock warrant.

(Springer Aff. at ¶ 6).

McCloud claims that Springer's affidavit was insufficient to justify the

authorization to enter without knocking and announcing.  According to McCloud, the affidavit

did not demonstrate a particularized need for the no-knock entry because it relied only upon

boilerplate language.  (Docket # 14).

McCloud's argument is essentially identical to one recently rejected in a thorough

decision by the Hon. Charles J. Siragusa, United States District Judge.  *See United States v.*

*Linder and United States v. Chisolm*, Nos. 03-CR-6116 and 03-CR-6181, slip op. (W.D.N.Y.

Jan. 24, 2005).  In that decision, Judge Siragusa reviewed search warrants authorizing no-knock

entries that had been issued upon affidavits describing multiple controlled purchases of narcotics

from the residences to be searched.  The affidavits requested the no-knock authorization based

upon the affiants' opinions that knocking and announcing would be dangerous because, in their

view, informed by their law enforcement training and experience, weapons are often present

where narcotics trafficking activities occur and narcotics dealers often destroy, dispose of or hide

the narcotics to avoid seizure by law enforcement.  Like Judge Siragusa, I am inclined to believe

that the affidavit submitted to the issuing judge was insufficient to warrant no-knock

authorization on the grounds of dangerousness, but was sufficient to justify such authorization on

the grounds that the narcotics sold from that location could easily have been destroyed or

discarded if the officers announced their entry.  *See*, *e.g.*, *Rodriguez v. Butler*, 536 F.2d 982, 987

(2d Cir. 1976) ("[a]rguably the presence of easily disposable contraband without more constitutes

a sufficient exigency to justify no-knock entry"), *cert. denied*, 429 U.S. 943 (1976); *United States

v. Bynum*, 362 F.3d 574, 581 (9th Cir. 2004) ("the disposable nature of drugs . . . supports the

reasonableness of dispensing with a formal knock and announce"); *United States v. Peterson*,

353 F.3d 1045, 1050 (9th Cir 2003) (no-knock entry was justified by suspected presence of

narcotics, which are "the quintessential disposable contraband"); *United States v. Kennedy*, 32

F.3d 876, 882 (4th Cir. 1994) (reasonable to assume that experienced narcotics dealers would

attempt to destroy evidence unless officers acted quickly), *cert. denied*, 513 U.S. 1128 (1995);

*United States v. Moore*, 956 F.2d 843, 850 (8th Cir. 1992) (reasonable to assume suspects selling

narcotics in small quantities would attempt to destroy evidence).

        Moreover, although the warrant application presented to Judge Keenan may have

contained boilerplate language, it is clear from the face of the warrant that he considered such

language in relation to the factual assertions contained in Springer's affidavit.  The proposed

warrant, as it was originally submitted, would have authorized the search to be conducted

"anytime of the day or night."  Judge Keenan deleted that language and handwrote that the search

was to be conducted "between 6:00 a.m. and 9:00 p.m."  (Docket # 14, Ex. A).  This

modification demonstrates that Judge Keenan carefully considered the proposed language in the

warrant and modified it as he believed appropriate.

In any event, this Court need not conclusively determine whether the affidavit's assertions were sufficient to establish probable cause because I find, as Judge Siragusa did in *Linder* and *Chisolm,* that the searching officers were justified in relying in good faith upon the no-knock provision.  In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court held that the Fourth Amendment exclusionary rule should not be applied to evidence obtained by a police officer whose reliance on a search warrant issued by a neutral magistrate was based on "objective good faith," even though the warrant itself might ultimately be found to be defective.  *Id.* at 918-23; *United States v. Salameh*, 152 F.3d 88, 114 (2d Cir. 1998), *cert. denied*, 525 U.S. 1112 (1999); *United States v. Benedict*, 104 F. Supp. 2d 175, 182 (W.D.N.Y. 2000).  The rationale underlying this good-faith exception is that the exclusionary rule "cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity."  *Leon*, 468 U.S. at 919.

The Court in *Leon* identified four situations in which the good faith exception is inapplicable.  Specifically, an executing officer's reliance on a search warrant will not be deemed to have been in good faith:

> (1) where the issuing magistrate had been knowingly misled;
>
> (2) where the issuing magistrate wholly abandoned his or her judicial role;
>
> (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and
>
> (4) where the warrant is so facially deficient that reliance upon it unreasonable.

*Id.* at 923.  *See United States v. Cancelmo*, 64 F.3d 804, 807 (2d Cir. 1995) (citations omitted).

Here, McCloud has not alleged – nor has he submitted any evidence to suggest – that the issuing

14

judge was knowingly misled, that he abandoned his neutral role or that the warrant was facially

deficient.  Rather, McCloud apparently contends that the affidavit, by relying upon boilerplate

language, was so lacking in probable cause as to render reliance upon it unreasonable.  This

Court disagrees.

In *United States v. Tisdale*, 195 F.3d 70, 72-73 (2d Cir. 1999), the Second Circuit

applied the good faith exception to a warrant containing a no-knock authorization.[5]  The

application in that case, as noted by the Second Circuit, coupled with the issuing court's

interview of the informant, described several recent controlled purchases of narcotics from the

location to be searched.  On that record, the issuing court authorized a no-knock entry.  Upon

review, the Second Circuit concluded that regardless of the ultimate validity of the warrant, the

searching officers had the right to rely upon it because the supporting affidavit "point[ed] to the

existence of particularized exigent circumstances," namely, the readily disposable form of

narcotics being distributed from that location.  *Id*. at 73.  Nothing in that opinion suggests that the

Second Circuit's reasoning would apply any less to the facts before this Court, arising as they

have several years after the *Tisdale* decision.

In the case at bar, Springer's affidavit provided information regarding two

purchases of narcotics from the location to be searched – evidence which could be easily

discarded.  In both purchases, cocaine was sold in small quantities, packaged in separate "dime"

or $10 bags.  This information, taken together with Springer's opinion concerning the ease and

speed with which controlled substances may be disposed of or secreted, provided a sufficient

---

[5] In *Tisdale*, the Second Circuit noted that the statutory text of New York's no-knock provision did not conflict with the constitutional requirements set forth in *Richards*, 502 U.S. at 394, which invalidated any blanket no-knock rules.  195 F.3d at 73.

basis for the executing officers to rely reasonably upon Judge Keenan's determination that the

no-knock authorization was justified.  Accordingly, it is my recommendation that McCloud's

motion to suppress tangible evidence based upon the no-knock authorization be denied.


## IV.  Scope of the Warrant

In his final motion, McCloud challenges the scope of the search warrant.  During

the search of 56 Garfield Street, officers seized, among other things, a .22 caliber bolt action

rifle, which was located along with cocaine base and marijuana in a closet attached to the foyer

of the residence.  Also located in the foyer was a BB gun and numerous rounds of ammunition.

(Docket # 15 at 2).  McCloud claims that the weapons and ammunition should be suppressed

because the search warrant did not authorize a search for firearms.  (Docket # 14).

The issuance of a search warrant requires that probable cause exists to believe that

(1) a crime has been committed and (2) evidence of such crime is located in the place to be

searched.  *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983) (citing *United States v.*

*Harris*, 403 U.S. 573, 584 (1971)).  In addition, the Second Circuit has repeatedly found that

"firearms are as much tools of the [narcotics] trade as are commonly recognized articles of

narcotics paraphernalia."  *United States v. Soto*, 959 F.2d 1181, 1186 (2d Cir. 1992) (quoting

*United States v. Crespo*, 834 F.2d 267, 271 (2d Cir. 1987), *cert. denied*, 485 U.S. 1007 (1988));

*United States v. Torres*, 901 F.2d 205, 235 (2d Cir. 1990) ("experience . . . has taught us that

substantial dealers in narcotics keep firearms on their premises as tools of the trade") (quoting

*United States v. Wiener*, 534 F.2d 15, 18 (2d Cir.), *cert. denied*, 429 U.S. 820 (1976); *see also*

*United States v. Edmond*, 718 F. Supp. 994, 996 (D.D.C. 1989) (firearm seized from defendant

16

was classified as "material relating to the distribution of narcotics" and was thus within the scope

of a search warrant).

        Springer's affidavit, which described two controlled narcotics purchases,

established probable cause to believe that evidence of a drug trafficking crime would be found at

56 Garfield Street.  The warrant issued by Judge Keenan upon review of Springer's affidavit

authorized a search for:

> Cocaine, in violation of Section(s) 220 of the New York State
> Penal Law, and all implements and paraphernalia used to prepare
> for sale, packaging and/or administer any Cocaine in any form.
> Also, any such evidence which tends to demonstrate that a drug
> related offense was committed or that a particular person
> participated in the commission of such offense, to include written
> records and books tending to show sale and trafficking of Cocaine,
> and money showing profits from the sale of Cocaine pursuant to
> Section 690.10(4) of the New York State Criminal Procedure Law.
> Also, items or articles of personal property tending to show identity
> of person in ownership, dominion or control of said premises.

(Docket # 14, Ex. 2).  The warrant did not specifically mention firearms.

        This Court need not determine, however, whether the warrant properly authorized

a search for firearms because even if it did not, the firearms would have inevitably been

discovered during the search for drugs.  In other words, the firearms were properly seized under

the "plain view" doctrine.

        The plain view doctrine "authorizes seizure of illegal or evidentiary items visible

to a police officer whose access has some prior Fourth Amendment justification and who has

probable cause to suspect that the item is connected with criminal activity."  *Illinois v. Andreas,*

463 U.S. 765, 771 (1983).  The United States Supreme Court has set forth a three-part test to

determine whether evidence found in plain view should be admissible.  First, the officer must

have had a legitimate right to be in the location from which the object was plainly viewed.

Second, the item's incriminating character must have been immediately apparent.  And third, the

officer must have had lawful access to the object.  *Horton v. California*, 496 U.S. 128, 136-37

(1990).

McCloud argues that the government cannot satisfy the first requirement –

legitimate right to enter – because the searching officers entered the residence without knocking

and announcing their presence.  (Docket # 14).  For the reasons discussed above, I find that the

no-knock authorization was lawful and thus does not bar applicability of the plain view

exception.  The search warrant authorized the officers to enter and search 56 Garfield Street for

narcotics and narcotics records and paraphernalia.  As they searched the foyer and closet for

drugs and records, they would have inevitably discovered the firearms and ammunition located

therein, the incriminating nature of which would have been immediately apparent based upon

their proximity to the narcotics also discovered.  As a result, it is the recommendation of this

Court that McCloud's motion to suppress the firearms and ammunition seized from 56 Garfield

Street be denied.

## **CONCLUSION**

For the foregoing reasons, it is the Report and Recommendation of this Court that

defendant's motion to suppress evidence seized from 56 Garfield Street on the grounds that the

search warrant relied upon confidential informants of unknown veracity **(Docket # 14)** be

**DENIED**.  It is my further Report and Recommendation that defendant's motions to suppress

because the officers executing the search warrant failed to knock and announce their presence

**(Docket # 14)** and because they exceeded the scope of the warrant **(Docket # 14)** be **DENIED**.

**IT IS SO ORDERED.**

s/ Marian W. Payson
_____
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
　　　　February 10, 2006

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York.[6]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

                                        s/ Marian W. Payson
                                        MARIAN W. PAYSON
                                        United States Magistrate Judge

Dated: Rochester, New York
        February 10, 2006.

---

[6] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(F) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the ten days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).